UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



NIGHT BOX
FILED

MAY 2 6 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 00-6203-CIV-GOLD/SIMONTON

CLAIRE BLUMBERG, on her own behalf and on
behalf of all class members similarly situated,

    Plaintiffs,

vs.

USG ANNUITY & LIFE COMPANY, an
Oklahoma corporation,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
## AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure (2000), the

defendant, USG Annuity & Life Company ("USG"), moves to dismiss the Amended Complaint

with prejudice because it fails to state, and cannot state, a claim upon which relief can be granted.

In support of this motion, USG states as follows:

1.        On February 10, 2000, the plaintiff, Claire Blumberg ("Blumberg"), filed a

purported nationwide class action ("Original Complaint"), asserting that USG allegedly sold a

single-premium-deferred annuity to Blumberg with a so-called "pick-a-commission" feature

resulting in her receiving a lower first-year interest rate than "substantially similar" USG

annuities sold to other, implicitly younger, individuals. Original Complaint ¶¶ 1, 13, 14. As with

the Amended Complaint, Blumberg alleged an unlimited class period. Original Complaint ¶ 6.

NON-COMPLIANCE OF S.D. fla. L.R. _7.1 All_.



2.      On April 17, 2000, USG filed its motion to dismiss Blumberg's original Complaint based on the same arguments contained in this motion, including Blumberg's complete failure to plead any facts in support of her claims even though she incorporated allegations of fraud into each of her negligence and contract-based counts.

3.      On May 10, 2000, Blumberg amended her complaint ("Amended Complaint"). The Amended Complaint, however, is identical to the original Complaint except for corrected scrivener errors and an additional claim for injunctive relief. Significantly, Blumberg did not add any factual allegations in support of her claims. Nor did she attempt to correct any of the glaring fatal flaws pointed out in the original complaint.

4.      Blumberg generally alleges that USG marketed so called "pick-a-commission" annuities that directly linked the amount of first-year "bonus" interest the customer received in inverse proportion to the amount of interest commission received by the independent broker, with the broker having the discretion to decide "arbitrarily . . . who received the higher interest rate guarantee and bonus and who did not." Amended Complaint ¶¶ 14-16.

5.      Blumberg argues that the alleged discriminatory conduct violates the Unfair Insurance Trade Practices Act ("UITPA"), which she attempts to indirectly enforce by advancing claims of fraudulent and negligent omission, in counts I and II, breach of fiduciary duty, in count III, unjust enrichment and money had and received, in counts IV and V, and by requesting immediate injunctive relief, in count VI.

6.      Because Blumberg has not pled fraud with particularity, yet incorporates allegations of fraud into every count, the entire Amended Complaint should be dismissed for not complying with Rule 9(b) of the Federal Rules of Civil Procedure.

2

7.     All of the counts should also be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Amended Complaint contains only conclusory statements and generalizations (based on a newsletter article that does not even mention USG) and simple factual allegations that the named plaintiff purchased an annuity from the defendant.

8.     The breach-of-fiduciary-duty claim, count III, should be dismissed because the purchase of an annuity from an insurance company is an arms-length-commercial transaction that does not create a fiduciary duty under Florida law.

9.     The existence of a contract between the parties defeats Blumberg's equitable claims in counts IV and V for unjust enrichment and money had and received. The plaintiff's remedies are, therefore, limited to those at law, and these counts should be dismissed.

10.    Similarly, because Blumberg has an adequate legal remedy and has not stated any actionable claims, injunctive relief is inappropriate and count VI should be dismissed.

11.    As with the Original Complaint, no amendment will cure the legal deficiencies in Blumberg's Amended Complaint. Moreover, Blumberg's failure to correct the fatal flaws previously noted in defendant's initial motion to dismiss or to include any additional factual allegations in the Amended Complaint confirms her inability to cure the factual deficiencies as well. Dismissal should, therefore, be with prejudice.

WHEREFORE, for the reasons stated above and in the Memorandum of Law in support hereof, the defendant respectfully requests that this Court dismiss the plaintiff's Amended Complaint, counts I, II, III, IV, V, and VI with prejudice.

STEEL HECTOR & DAVIS LLP

## MEMORANDUM OF LAW

On June 15, 1992, Plaintiff Claire Blumberg ("Blumberg") purchased an MVA III single-premium-deferred[1] annuity policy from USG Annuity & Life Company ("USG"). Blumberg alleges that other unnamed USG annuities would have been a better "buy" and were sold to others. The plaintiff does not allege that USG breached any terms of the annuity contract. Instead, Blumberg alleges that USG provided her and the putative class members (who she claims on information and belief are over 60 years in age) an initial year "bonus" interest rate lower than it offered other, implicitly younger, unidentified individuals purchasing other unidentified annuity products. Blumberg concludes that USG's "uniform fraudulent course of conduct" violates UITPA which prohibits discriminatory rates, and that USG's failure to inform the plaintiff of this violation and illegal discrimination constitutes fraud, negligence, and a breach of fiduciary duty.

The only specific fact alleged in support of this uniform fraudulent course of conduct, however, is that: Claire Blumberg purchased an MVA III single-premium-deferred annuity policy from USG. That is all. In this purported national class action Blumberg does not identify a single other annuity holder, identify a single other annuity, or attach even her own annuity (much less any other USG annuity) to substantiate the vague, conclusory, and baseless allegation that "others" were sold "substantially similar annuities" with higher interest rates for an unspecified period of time.[2]

---

[1]     "Deferred" is used to describe the deferral of payment of, and tax liability for, the accrued interest.

[2]     The plaintiff's entire action against USG apparently stems from a brief-unpublished newsletter article, attached to the Amended Complaint, written by a purported "industry

USG respectfully submits that the scope of litigation Blumberg wishes to commence demands that she fulfill every substantive and procedural prerequisite to such a claim, which serve to "prohibit[] plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1359 (S.D. Fla. 1999); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344-45 (1979) (recognizing that the potentially "ruinous effect" of class litigation requires district courts to "be especially alert to identify frivolous claims brought to extort nuisance settlements"). The unjustified costs borne by USG and the Court is no more apparent than in this action given Blumberg's failure to: (i) plead any facts much less fraud with particularity; (ii) support any of the six counts with more than a single fact; (iii) plead a recognized fiduciary duty; (iv) plead an actionable equitable claim; (v) create a new remedy at law by operation of UITPA; (vi) or have any basis for seeking immediate injunctive relief. Not only has Blumberg failed to state an actionable claim, but given the magnitude and nature of these deficiencies, the Amended Complaint should be dismissed with prejudice.

---

commentator." The author, who describes a conversation with an unidentified insurance company offering annuities that allow agents or brokers to increase their commissions by lowering the purchaser's interest rate, apparently concedes that "hundreds of ethical companies and thousands upon thousands of agents" are not involved in this practice. Nevertheless, based *solely* on this article, the plaintiff purports to bring a nationwide class action against USG alleging, without apparent investigation, that USG sold such products. *See Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) ("[Rule 9(b)'s] clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.")

5

## I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILING TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requires that every averment of fraud must state "(1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content of and manner in which these statements misled [Blumberg]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

The Amended Complaint is permeated with vague conclusory averments of fraud incorporated haphazardly into each count of the Amended Complaint. *See* Amended Complaint ¶¶ 30, 38, 46, 52, 59 (incorporating "Defendant's Fraudulent Scheme," ¶¶ 12-29, into each count). The essential conclusory allegation of the Amended Complaint, incorporated into each count, is that USG discriminated against citizens over the age of sixty by selling them annuities with lower interest rates than annuities it sold others, and USG failed to inform the mature

citizens of this fraud.[3]  Thus, the entire Amended Complaint is infected with the same defect and

should be dismissed.

The Amended Complaint's sketchy allegations with respect to the actual experience of

Blumberg is also devoid of any information as to what occurred when Blumberg purchased her

annuity.  *See Brooks,* 116 F.3d at 1380 (citing *Leonard v. Stuart-James Co.,* 742 F. Supp. 653,

659 (N.D.Ga.1990) (granting motion to dismiss when complaint failed to allege "specifically

when, where, by whom, or specifically what the representation was")).  Blumberg does not

identify the person who sold her the annuity, whether the person was an insurance broker or an

agent, the content of any discussions with the broker/agent, the alleged "misrepresentation[s]" by

the agent or broker, the alleged misrepresentations made on each account statement she received,

the name of the other annuity policies allegedly containing the better (higher) interest rates, the

name of any "others" who purchased annuities from USG with better (higher) interest rates, the

features of these annuities that make them substantially similar, or the features in the annuities

that were different.  Amended Complaint ¶¶ 14-15, 28.  Importantly, Blumberg does not allege a

_____

[3]        *See* Amended Complaint ¶¶ 1 ("This is a class action for fraudulent omission, negligent
omission, breach of fiduciary duty, unjust enrichment, and money had and received."); 1, 12-29
("Each claim is based upon USG's" allegedly "Fraudulent Scheme"); 10 ("Among the questions
of law and fact common to all Class members . . . [is w]hether Defendant committed fraud . . .
."); 12-13 (The allegedly "Fraudulent Scheme" targeted "senior citizens"); 15-16 (As part of the
fraudulent scheme, USG gave its agents and brokers discretion to raise their commissions by
lowering the purchasers' interest rates); 14 (an unnamed agent or broker fraudulently sold the
named plaintiff an annuity with a lower interest rate than available in other unidentified USG
annuities sold to other unidentified customers); 17-18 (USG's alleged sale of these lower-
interest-rate annuities is "discriminatory" and "unlawful"); 19 (USG failed to make "full and
honest disclosure" of the applicable interest rates); 25-28 (USG made misrepresentations on its
account statements and failed to disclose the discrepancy in interest rates); 29 ("Defendant's
conduct was gross, malicious and oppressive, involving a uniform fraudulent course of conduct
and omissions and misrepresentations . . . .").

STEEL HECTOR & DAVIS LLP

single fact demonstrating a "gross, malicious and oppressive . . . uniform fraudulent course of conduct and omissions and misrepresentations" by USG, a company employing hundreds of individuals and utilizing the services of thousands of independent brokers across the country. Amended Complaint ¶ 29; *see, e.g., Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970-71 (5th Cir. 1981) (affirming dismissal of complaint in which plaintiff made only conclusory allegations of fraudulent concealment).

Simply put, the content and circumstances of any oral or written statement or oral or written sales presentation are not alleged. Because the relevance of USG's alleged fraudulent omissions depends on the existence of so called "pick-a-commission" annuities (as described in the newsletter article attached to the Amended Complaint) that are "substantially similar" and depends on the representations made by the agents in selling the annuities, it is impossible to determine from the Amended Complaint "precisely what statements were made in what documents or oral representations or what omissions were made," "the content of such statements," or "the time and place of each such statement" that Blumberg contends were "fraudulent." *Brooks*, 116 F. 3d at 1380.

The failure of the Amended Complaint to allege the identity of any of the persons claimed to have made false or misleading statements creates additional issues under both her fraud and breach of fiduciary duty claims. Blumberg alleges no facts about her relationship with anyone associated with USG that would have created some special or confidential relationship making the plaintiff more likely to accept false or misleading statements. Further, Blumberg does not allege whether USG employed the person who made the false or misleading statements as an agent or if the person was an independent broker for Blumberg. Thus, the Amended Complaint

8

fails to set forth any factual basis for either a claim of fraud or a breach of a fiduciary duty (as argued more fully below).

In short, the Amended Complaint makes no attempt to comply with Rule 9(b) despite including "fraud" allegations in every count. The Amended Complaint should be dismissed in its entirety. *Brooks*, 116 F.3d at 1381.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE AN ACTIONABLE CLAIM PURSUANT TO RULE 12(b)(6)

Notice pleading under the Federal Rules does not permit a plaintiff to allege mere conclusions. The Court is not bound to accept conclusory allegations, unwarranted deductions, or mere legal conclusions. *Ellen S. v. Florida Bd. of Bar Examiners*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994). Nor should the Court "assume that plaintiffs can prove facts not alleged." *Quality Foods de Centro America, S.A. v. Latin America Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must allege sufficient facts so that each element of the alleged cause of action can be identified. *Municipal Util. Bd. of Albertville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir. 1991). Conclusions of law should not survive a motion to dismiss if not supported by "facts constituting a legitimate claim for relief."[4] *Id.* Succinctly, "litigation today is too expensive a process to waste time on fanciful claims." *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 971 F. Supp. 1419, 1424 (M.D. Fla. 1997).

---

[4]    The First Circuit has "plotted the dividing line between adequate 'facts' and inadequate 'conclusions': it is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability that 'conclusions' become 'facts' for pleading purposes." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 47-48 (1st Cir. 1999) (internal citations and quotations omitted).

STEEL HECTOR & DAVIS LLP

In an extraordinary display of *chutzpah*, Blumberg attempts to support all five counts of the Amended Complaint and seeks class certification for a nationwide class action based on a *single* specific factual allegation—i.e., she purchased an annuity from USG.[5] Blumberg supplements this lack of facts with a plethora of conclusory and vague allegations of "a uniform fraudulent course of conduct and omissions and misrepresentations" that are "gross, malicious and oppressive." Amended Complaint ¶ 29. Such shotgun pleading is impermissible. *See GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1368 (11th Cir. 1998) (condemning the shotgun pleading); *see also Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996); *Khalilha McKenzie v. E.A.P. Management Corp.*, 1998 WL 657524 (S.D. Fla. July 27, 1998) (same). With respect, the emperor has no clothes on.

For example, Blumberg asserts in counts I and II (fraudulent and negligent omission) that USG owed her a duty based on the defendant's superior knowledge of the anti-discrimination-in-rates provisions of UITPA, the absence of an arm's length negotiation, and "the importance of the omissions." Amended Complaint ¶¶ 32, 40. These are assumptions and conclusions without factual premise. Blumberg fails to plead any supporting facts. Blumberg further alleges USG's intent to induce her to rely on these "omissions and misrepresentations" without alleging any facts supporting the reasonableness of such reliance.

Count III (breach of fiduciary duty) suffers from the same pleading deficiencies. Blumberg simply pronounces the existence of a fiduciary duty and a breach by USG's "practice of providing higher interest rates to other purchasers of substantially the same Annuities" without

---

[5]     Blumberg also asserts facts in support of the Court's diversity jurisdiction (the residence of Blumberg and USG). Neither of these two facts assists her in pleading the elements of the claims alleged.

10

alleging any facts demonstrating the existence of a trust or a confidential relationship between the parties and without identifying a single policy providing for higher interest rates—much less establishing such a "practice." Counts IV and V (unjust enrichment and money had and received) are little more than creative after thoughts with no effort being expended to allege facts supporting each element of such claims in the face of a written contract between the parties.

At a minimum, this Court should require Blumberg to replead her claims stating *facts* and not legal conclusions and require Blumberg to specifically designate the facts that she believes support each of her theories. *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (recognizing that "[i]f the trial judge does not quickly demand repleader, all is lost . . . [and the court] will be unable to squeeze the case down to its essentials"). Blumberg, of course, had the opportunity to plead facts in support of her claims in amending her complaint, but she did not. Given the overwhelming absence of facts, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## III.    THE FLORIDA LEGISLATURE DID NOT CREATE A PRIVATE RIGHT OF ACTION TO ENFORCE SECTION 626.9541(1)(g)(1)

The gravamen of the Amended Complaint is that USG discriminated against Blumberg by selling her an annuity with lower interest rates than it sold to other individuals in violation of the Unfair Insurance Trade Practices Act ("UITPA"). *See* Amended Complaint ¶ 17 (citing section 626.9541(1)(g)(1), Florida Statutes (1999), of UITPA). Blumberg relies on the alleged illegal discrimination throughout the Amended Complaint and uses it to satisfy elements of each of the counts. *See, e.g.,* Amended Complaint ¶¶ 19 (reasonable expectation because of unfair

11

sales practice prohibition); 20 (fiduciary duty because of unfair sales practice prohibition); 24

(duty to disclose unfair sales practice); 33 (failed to disclose unfair discrimination); 34 (unfair

discrimination material); 39-40 (duty owed not to make material omission and breached by

failing to disclose unfair discrimination); 48 (discrimination breached fiduciary duty); 53, 57

(discrimination unjustly enriched USG); 61 (wrongfully withheld money through process of

discrimination); and 64 (discrimination warrants injunction).

UITPA is part of Florida's extensive statutory framework regulating the business of

insurance. Enforcement of UITPA is predominantly accomplished by fines set forth in section

626.9521, Florida Statutes (1999), which lists penalties from $2,500 to $100,000. UITPA does

*not* create any new remedy at law. *Cycle Dealers Ins., Inc. v. Bankers Ins. Co.*, 394 So. 2d 1123,

1125 (Fla. 5th DCA 1981) (construing section 626.9631, Florida Statutes (1999), as only

preserving causes of action available before UITPA's enactment). And when enacted, UITPA

did not provide a private right of action. *Coira v. Florida Medical Association, Inc.*, 429 So. 2d

23 (Fla. 3d DCA 1983).

The Florida Legislature has since provided for a private right of action under UITPA in

very limited circumstances. *See* Fla. Stat. § 624.155(1)(a)(1) (listing the limited statutory

violations and acts by an insurer for which there is a private right of action). The Florida

Legislature has *not* recognized a private right of action for violations of the provision allegedly

violated by USG (i.e., section 626.9541(1)(g)(1)). The rule of statutory construction *inclusio*

*unius est exclusio alterius* [the inclusion of one is the exclusion of another], therefore forecloses

any cause of action founded on a UITPA violation. *See, e.g., National Airlines, Inc. v. Wikle*,

451 So. 2d 908 (Fla. 1st DCA 1984) (applying rule to plain language of statute to deny relief).

STEEL HECTOR & DAVIS LLP

Because each of the counts depends on the alleged violations of UITPA to satisfy the counts' elements, the Amended Complaint should be dismissed.

## IV.    USG OWES NO FIDUCIARY DUTY TO BLUMBERG

Blumberg alleges in count III that she had a fiduciary relationship with USG and its agents. Other than to allege she purchased an annuity contract from an unnamed insurance agent of USG, Blumberg offers no facts concerning her dealings with her insurance agent or broker and provides no facts to show a fiduciary or confidential relationship ever existed. *See* Amended Complaint ¶¶ 46-51. Blumberg based her conclusion that USG and its agents owed her a fiduciary duty because of USG's "superior knowledge" and the "extensive regulation of the insurance industry." Amended Complaint at ¶¶ 20, 47. These are not "facts" sufficient to support such a theory. *Swerhun v. General Motors Corp.*, 812 F. Supp. 1218, 1223 (M.D. Fla. 1993) (recognizing that whether a fiduciary relationship exists is a question of fact, and plaintiff carries the burden for establishing these facts).

There is no general "fiduciary" or "confidential" relationship between an insurance company and a purchaser of an annuity or insurance policy under Florida law. *See, e.g., Iowa Nat'l. Mut. Ins. Co. v. Worthy*, 447 So. 2d 998, 1001 (Fla. 5th DCA 1984) (affirming denial of constructive fraud claim because insurer was not in a fiduciary relationship with its insured). Absent "substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party," Blumberg cannot rely upon a purchase of an annuity to create a fiduciary or confidential relationship. *Swerhun,* 812 F. Supp. at 1223. The relationship between USG and Blumberg is an arms-length commercial one, for the

13

purposes of the purchase and sale of annuities. For example, COUCH ON INSURANCE (3rd ed. 1997) states:

> [a]s a general rule, the relation between the parties to a contract of insurance is that of debtor and creditor; that is, of one contracting party to another contracting party, rather than of trustee and cestui que trust, or such as would arise by virtue of a will or other testamentary instrument.

*Id.* at § 40:9. Thus, "[m]ere insured-insurer relationship will not place fiduciary responsibilities upon the insurer . . . ." *See id.* at n.41.

The Florida Supreme Court considered the nature of the relationship between insurer and insured in the context of a sale of insurance in *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So. 2d 557 (Fla. 1997). The precise question at issue in *Forgione*, whether a claim for negligent failure to obtain coverage was assignable or was personal to the intended insured, turned on the nature of the relationship between the insurer and the insured. The court found that "[u]nder Florida law, parties can assign causes of action derived from a contract or a statute." *Id.* at 559. However, claims arising from "highly confidential relationships," such as legal malpractice claims, constitute "personal tort claims [which] cannot be assigned under Florida law." *Id.* "While an insurance agent is required to use reasonable skill and diligence in obtaining coverage for an insured, the agent also owes the insurance company, which is his or her principal, an obligation of high fidelity." *Id.* at 560. Thus, the Court concluded that a claim for negligent failure to insure was assignable since the relationship between insurer and insured in the purchase of insurance was a commercial, rather than a confidential or fiduciary, relationship. *See also Goshen v. The Mut. Life Ins. Co. of N.Y.*, 1997 WL 710669 (N.Y. Supp. Ct. Oct. 21, 1997) ("A considerable burden would be placed upon the insurance industry if insurers were to

14

become per se fiduciaries for all of their insureds, based merely on the trust which the insured placed in the superior knowledge of their sales agent."), *aff'd*, 259 A.D. 2d 360 (N.Y. App. Div. 1999).

Although the majority of commentary on this issue involves the sale of insurance, the absence of a fiduciary relationship between an insurance company and its customers is not altered by an insurance company's sale of annuities rather than insurance policies. *See, e.g., Moss v. Appel*, 718 So. 2d 199, 201 (Fla. 4th DCA 1998) (recognizing that agent may owe fiduciary duty to purchaser of annuity, but only if agent is acting as insurance *broker*—i.e, operating at direction of purchaser and not employed by insurance company—rather than as insurance *agent*).[6] Inasmuch as Blumberg has alleged nothing more than the purchase of an annuity, the Amended Complaint fails to state a claim for breach of fiduciary duty and should be dismissed. *Swerhun*, 812 F. Supp. at 1223.

## V.    BLUMBERG'S EQUITABLE CLAIMS SHOULD BE DISMISSED

Unjust enrichment or money had and received are equitable actions to bring about the disgorgement of some ill-gotten gain. *See Hall v. Humana Hosp. of Daytona Beach*, 686 So. 2d 653, 656 (Fla. 5th DCA 1997) (recognizing that unjust enrichment is the modern equivalent of money had and received); *see also Jacobs v. Seligman*, 63 So. 2d 315 (Fla. 1953). In counts IV and V, Blumberg asserts these equitable theories as grounds to require USG to pay the difference

---

[6]    Although the paragraphs listed under count III reference only USG's "agents," the incorporated paragraphs of the Amended Complaint include allegations concerning the sale of discriminatory policies by USG's "independent network of brokers." *Compare* ¶ 16 *with* ¶ 47. As recognized in *Moss*, however, a broker neither represents nor is employed by an insurance company, but instead acts at the behest of the person purchasing the annuity. 718 So. 2d at 201.

in interest paid between her annuity and other unidentified annuities. Under Florida law, however, these equitable claims are predicated on the absence of an express contract controlling the parties' relationship. *See, e.g., Santovenia v. Confederation Life Ass'n*, 460 F.2d 805 (5th Cir. 1972) (refusing to apply equitable doctrine of unjust enrichment in light of express insurance contract).

Similarly, these equitable claims are "not available where there is an adequate legal remedy." *See, e.g., Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987). Accordingly, such claims must fail upon a showing that an express contract exists. *See Mobile Oil Corp. v. Dade County Esoil Management Co. Inc.,* 982 F. Supp. 873, 880 (S.D. Fla. 1997); *see also Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997); *Jacobs v. Seligman*, 63 So. 2d 315 (Fla. 1953). Here, Blumberg alleged an express, written agreement as to the precise wrongs alleged. Therefore, the equitable actions asserted in counts IV and V should be dismissed.

Finally, USG did not receive the alleged ill-gotten gain. The remedy that Blumberg seeks in these counts is restitution. The theories that permit resort to the remedy of restitution are essentially indistinguishable, for each has the same fundamental elements, and courts use them interchangeably.

> Whether the action be referred to as one for restitution or "money had and received," an action may, in general, be maintained whenever one has money in his hands belonging to another which in equity and good conscience, he ought to pay over to that other.

*Deco Purchasing & Distrib. Co., Inc. v. Panzirer*, 450 So. 2d 1274, 1275 (Fla. 5th DCA 1984). Thus, the rule of recovery extends to all cases wherein the plaintiff becomes entitled to sue for

"money had and received by the defendant . . . under circumstances which, ex aequo et bono [in justice and fairness], the defendant ought to refund upon demand." *Southern States Power Co. v. Pittman*, 165 So. 893, 895 (Fla. 1936). The Amended Complaint affirmatively alleges that the money Blumberg seeks to have returned was paid to the agent or independent broker, not held by USG. The plaintiff has not brought an action against her agent or broker for return of the commission.

## VI.    **BLUMBERG IS NOT ENTITLED TO INJUNCTIVE RELIEF**

Blumberg's only addition to the Original Complaint is a count requesting that the Court "immediately enjoin Defendant's activities" so that class members are not subjected "to the risk of repeated solicitations and sales of financially inferior Annuities." Amended Complaint ¶¶ 66-67. To the extent Blumberg seeks a preliminary injunction, she must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corporation v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *Id.* at 1306-07 (internal quotation marks omitted) (quoting *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)); *see also Richard v. Behavioral Healthcare Options, Inc.*, 647 So. 2d 976, 978 (Fla. 2d DCA 1994) ("Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a temporary injunction.").

17

First, for the reasons discussed above, Blumberg has failed to state any actionable claims. Therefore, she cannot demonstrate substantial likelihood of success on the merits.

Second, the Plaintiff has failed to allege any facts demonstrating irreparable injury. Even if this Court were to accept Blumberg's conclusory allegations as true, the injury of reduced interest is not an irreparable one. Because an adequate remedy at law exists, injunctive relief is not available. *B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Cas. Co.*, 549 So. 2d 197 (Fla. 3d DCA 1989) (recognizing that the absence of an adequate legal remedy is a prerequisite to injunctive relief and the ability to obtain a money judgment is an adequate legal remedy).

Third, accepting as true Blumberg's conclusory allegations, the threatened harm of a temporary loss of interest (that would be recovered if Blumberg could state an actionable claim) does not outweigh the tremendous loss to USG if it were restricted from selling annuities through ought the nation. The magnitude of the loss to USG is readily apparent. Rule 65(d) of the Federal Rules of Civil Procedure requires that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ." *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F. 3d 1407, 1411 (11th Cir. 1998) (quoting F. R. Civ. P. 65(d)). Given the absence of any facts identifying the "financially inferior annuities," the Court cannot craft an order detailing which annuities should not be sold. *See Clark v. Allied Associates, Inc.*, 477 So. 2d 656, 657 (Fla. 5th DCA 1985) ("[O]ne against whom an *injunction* is directed should not be left in doubt as to what he is required to do," especially when some activities are permissible and proper.) Because the terms of USG's annuities vary greatly to serve different client needs, compliance with an order that did not identify the "financially inferior annuities" would be difficult, disputed, and tremendously

18

costly for USG. Thus, the harm to USG would overwhelmingly outweigh any alleged harm to Blumberg.

Fourth, the injunction would limit the available annuity options to consumers and potentially disrupt the financially planning of present annuity holders simply based on the conclusory, vague, and baseless allegations of the plaintiff. Consequently, an injunction would be adverse to the public interest. For all these reasons, Blumberg is not entitled to injunctive relief.

## VII.    CONCLUSION

As with the Original Complaint, Blumberg's Amended Complaint alleges a uniform-nationwide-fraudulent course of conduct, yet she is unable to support these allegations with a single fact of fraud. Blumberg failed to cure the factual deficiencies of the Original Complaint not out of arrogance, but because she has no facts to plead. The Amended Complaint should be dismissed for this reason alone. Because the plaintiff seeks to enforce a statutory scheme that does not recognize a private right of action for the allegations alleged, no amendment to the Amended Complaint will state actionable claim. Therefore, the dismissal of the Amended Complaint should be with prejudice.

STEEL HECTOR & DAVIS LLP

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendant USG Annuity & Life Co.
200 South Biscayne Boulevard, Suite 4000
Miami, Florida 33131
Telephone:      (305) 577-2864
Telecopy:       (305) 577-7001
E-mail:         lmurphy@steelhector.com
                rpittman@steelhector.com

By: _____
        Lewis F. Murphy, P.A.
        Florida Bar No. 308455
        Robert W. Pittman
        Florida Bar No. 029744

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. mail this **26**[th] day of May, 2000 to: **MICHAEL E. CRIDEN, ESQ.,** Attorneys for Plaintiff, Hanzman Criden Chaykin & Rolnick, P.A., Commercebank Center, Suite 400, 220 Alhambra Circle, Coral Gables, Florida 33134.

By: _____
        Robert W. Pittman

MIA_1998/571046-3

20