

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO. 00-6203 CIV-GOLD/SIMONTON

CLAIRE BLUMBERG, on her own
behalf and on behalf of all class
members similarly situated,

     Plaintiffs,

v.

USG ANNUITY & LIFE COMPANY,
an Oklahoma corporation,

     Defendant.

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Claire Blumberg, on her own behalf and on behalf of all class members similarly situated, hereby submits her Memorandum in Opposition to Defendant USG Annuity & Life Company's Motion to Dismiss Plaintiff's First Amended Complaint.

## I. INTRODUCTION

In her First Amended Complaint ("Amended Complaint"), Plaintiff Claire Blumberg ("Blumberg") brings six claims[1] against Defendant USG Annuity & Life Company ("USG") for selling her a single premium fixed annuity in 1992 with a lower interest rate and bonus than was available in connection with substantially similar annuities USG was then offering for sale to other

---

[1] Count I - Fraudulent Omission; Count II - Negligent Omission; Count III - Breach of Fiduciary Duty; Count IV - Unjust Enrichment; Count V - Money had and Received; and Count VI - Injunctive Relief. On May 10, 2000, after being made aware of the fact that USG continues to this day its practice of selling inferior annuities to certain members of the public, Blumberg amended her complaint to add Count VI for injunctive relief.

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.
COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

individuals.  USG failed to disclose to Blumberg in 1992 that it was currently offering an almost

identical annuity product to the one she was about to purchase, save for the fact that the other annuity

paid a higher interest rate.  USG also failed to inform Blumberg that the savings to USG associated

with the lower interest rate on her type of annuity generally found its way into the pockets of USG's

agents as a motivation to sell USG's inferior annuities.

In its motion to dismiss, USG asserts five grounds for dismissal: (1) failure to plead fraud

with particularity; (2) no private right of action exists under § 626.9541(1)(g)(1); (3) failure to plead

a basis for the existence of a fiduciary duty; (4) asserting claims for unjust enrichment and money

had and received despite the existence of Blumberg's annuity policy; and (5) failure to plead the

elements for injunctive relief.  As shown below, none of these assertions have any merit.[2]

## II. THE FACTS ALLEGED

USG is in the business of selling life insurance and annuities.  Complaint at ¶ 12.[3]  On or

about June 15, 1992, Blumberg purchased from USG an MVA III single premium fixed annuity

policy ("MVA III").  ¶ 14.  A single premium fixed annuity is a contract with an insurance company,

under which the annuitant pays just one premium and the insurer agrees  to make periodic payments

to the annuitant, beginning either immediately or at some later date.  Moreover, under a fixed

---

[2]  Although not at issue on a motion to dismiss, USG implies that the scheme to defraud alleged in the Amended Complaint should never be certified as a class action.  Motion at 5.  However, USG's top-down, home-office fraud gives rise to exactly the sort of claims that have long been recognized as a paradigm class action by courts of this circuit and district.  This case arises out of USG's common fraudulent scheme directed against a large number of individuals, in which common issues predominate and class treatment is particularly appropriate.  *See, e.g., Medine v. Washington Mutual, FA,* 185 F.R.D. 366 (S.D. Fla. 1998) (certifying class based on "common overarching scheme to defraud based on omission"); *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983) (same); *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 334-37 (S.D. Fla. 1996) (same).

[3]  All references to the Amended Complaint hereinafter will be designated as "¶ ___."

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.
COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

annuity, as opposed to a variable annuity, the insurance company guarantees that a specific amount of money, based on a particular interest rate and/or interest bonus, will be paid to the annuitant in the future.

At the time Blumberg purchased her MVA III, USG was selling other annuity products that were identical to the MVA III from a financial standpoint, except that they paid out more favorable interest rates and/or interest bonuses to the annuitant. ¶¶ 15, 25 & 26. These more favorable interest rates and bonuses were directly related to the amount of commissions available to the agents who were selling USG's annuities. ¶ 14.

This lawsuit thus arises from USG's failure to disclose its practice of offering and selling annuities with higher interest rates and interest bonuses to certain individuals, while selling inferior products to Blumberg and others in the Class. ¶ 21.[4]

---

[4] Despite Blumberg having provided USG with a "short and plain statement" of her claims (*see* Rule 8(a)(2)), USG nevertheless argues that the Amended Complaint should be dismissed for "a complete failure to plead any facts in support of her claims." Motion at 2. What critical facts does USG contend are missing from the Amended Complaint? USG argues it cannot frame a response to the Amended Complaint because it purportedly does not know: What features of the annuities were different?; What was the alleged omission?; Who was Blumberg's agent?; What are the names of the persons in the Class and what are the names of the persons who purchased the annuities with the higher interest rates? Motion at 4 & 7. Obviously, the Amended Complaint answers the first two questions, USG knows the answer to the third (even if it were relevant), and the fourth is ridiculous. Taking the questions in order, Blumberg's annuity was different because it had a lower interest rate than substantially similar annuities being sold to other USG customers (*see* ¶¶ 1, 14, 21); USG's omission was its failure to disclose to Blumberg that it was selling her an annuity even though USG sold similar annuities with higher interest rates (*see* ¶¶ 1, 23); the name of the agent who sold Blumberg her USG annuity is irrelevant because the substance of the oral representation is not at issue (*see Kennedy*, 710 F.2d at 717), but, in any event, his name is Jeffrey Rosa (but USG already knew that because his name is prominently displayed on USG's Statement to Policyholder sent to Blumberg by USG) and, lastly, we can think of no reason why USG would need to know the names of all the persons in the Class or the names of its own customers who purchased its other more favorable annuities to frame a response to the Amended Complaint. Even if such information were relevant at the pleading stage, it is information in the exclusive possession of USG.

-3-

## III. STANDARD OF REVIEW

As the Eleventh Circuit has explained, "[a] district court should grant a 12(b)(6) motion only

if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'" *Tiftarea Shopper, Inc. v. Georgia Shopper, Inc.*, 786 F.2d 1115, 1117-

18 (11th Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)).

And as this Court recently held:

> In evaluating the sufficiency of the claim, all facts stated in the complaint are
> accepted as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229
> (1984), factual issues are to be resolved in favor of the plaintiff, *Quinones v. Durkis*,
> 638 F. Supp. 856, 858 (S.D. Fla.1986), and the prospect of recovery is irrelevant, *In
> re Asbestos Litigation*, 679 F. Supp. 1096, 1098 (S.D. Fla.1987).

*Miccosukee Tribe of Indians v. U.S.*, 6 F. Supp. 2d 1346, 1348-49 (S.D. Fla. 1998); *St. Joseph's*

*Hosp., Inc. v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir. 1986) (court must "accept

the well pleaded facts as true and resolve them in the light most favorable to the plaintiff").

Motions to dismiss are "viewed with disfavor and rarely granted." *Vernon v. Medical Mgm't*

*Assocs.*, 912 F. Supp. 1549, 1554 (S.D. Fla. 1996); *International Erectors, Inc. v. Wilhoit Steel*

*Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir.1968)) (noting that "[d]ismissal of a claim on

the basis of barebone pleadings is a precarious disposition with a high mortality rate."). *St. Joseph's*

*Hosp.*, 795 F.2d at 953 (such dismissals are "rare"). The Eleventh Circuit is, in fact, "reluctant" to

approve them. *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).

-4-

In short, the Complaint must show that the plaintiff has <u>no claim</u> before a 12(b)(6) motion may be granted. As discussed in detail herein, USG's motion simply cannot satisfy this strict standard for dismissal.[5]

## IV. BLUMBERG'S CLAIM FOR FRAUD SATISFIES BOTH RULE 8(a) AND RULE 9(b)

As mentioned above, Blumberg asserts six claims for relief. Only Count I sounds in fraud. USG urges this Court to dismiss <u>all</u> six claims for failing to plead fraud with particularity pursuant to Rule 9(b). USG's Rule 9(b) argument fails for at least three reasons. First, Rule 9(b) does not apply to Counts II through VI, none of which assert claims for fraud. Second, USG omits any discussion of Rule 8(a) and its interplay with Rule 9(b). And, third, in accordance with Rules 8(a) and 9(b), Blumberg has alleged sufficient facts to support Count I for fraudulent omission.

### A. Rule 9(b) Applies Only to Claims for Fraud

Although USG seems to think that the entire Amended Complaint should be dismissed for failure to allege fraud with particularity, Rule 9(b) actually applies only to Blumberg's first count for fraudulent omission. *See, e.g., Amerifirst Bank v. Bomar*, 757 F. Supp. 1365, 1377 (S.D. Fla. 1991) (breach of fiduciary duty and negligence claims not subject to Rule 9(b)); *Sturm v. Marriott Marquis Corp.*, 26 F. Supp. 2d 1358, 1372 (N.D. Ga. 1998) (claims for breach of fiduciary duty and breach of contract are not subject to Rule 9(b)); *Masso v. United Parcel Services*, 884 F. Supp. 610, 615 (D. Mass. 1995) (Rule 9(b) does not apply to claim for negligent misrepresentation); *Zucker v. Katz*, 708 F. Supp. 525, 530 (S.D.N.Y. 1989) (Rule 9(b) not applicable to claims for breach of

---

[5] USG has presented no grounds justifying dismissal of any aspect of the Amended Complaint, and, even if it had, Blumberg would be entitled to an opportunity to amend. *Friedlander v. Nims*, 755 F.2d at 813; *see also Bank v. Pitt*, 928 F.2d 1108, 1112-13 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.

COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

fiduciary duty or unjust enrichment). As shown below in section IV.C, the allegations in Count I more than satisfy the particularity requirement of Rule 9(b).[6]

### B. Rule 9(b) Does Not Abrogate Rule 8(a)

"Rule 8(a)(2)'s 'short and plain statement' abandons traditional pleading formalities . . . ." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999), *vacated on other grounds*, 204 F.3d 1069 (11th Cir. 2000). Under Rule 8, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 1297. USG does not even mention Rule 8 in its motion to dismiss.

Rule 9(b), on the other hand, requires a plaintiff to allege fraud with sufficient particularity to permit a person charged with fraud to have a reasonable opportunity and adequate information to frame a response to a complaint. *See Arral Indust. v. Touch Entertainment, Inc.,* 2000 WL 141269 (S.D. Fla. 2000); *Bomar*, 757 F. Supp. at 1381; *In re: U.S. Oil and Gas Litig.*, 1988 WL 28544, at *2 (S.D. Fla. 1988). Thus, the standard as applied in this Circuit does <u>not</u> require "detailed fact pleading of claims of fraud." *Arral*, at *3 (finding that the plaintiff provided defendants with sufficient information to answer the complaint and frame a response). Simply put, Rule 9(b) requires only that allegations of fraud be accompanied by "some delineation of the underlying acts and transactions which are asserted to constitute fraud." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Del Valle*, 528 F. Supp. 147, 149 (S.D. Fla. 1981).

Rule 9(b)'s requirement that fraud be alleged with particularity, therefore, does <u>not</u> abrogate the concept of notice pleading set forth in Rule 8. *Durham v. Business Management Associates*, 847

---

[6] Obviously, even if Rule 9(b) applied to Blumberg's other counts, she has alleged fraud with sufficient particularity in connection with Count I that her other counts would also necessarily comply with Rule 9(b).

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.

COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

F.2d 1505, 1511 (11th Cir. 1988); *Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc.*, 814 F. Supp.

1084, 1092 (S.D. Fla. 1992). An exclusive focus on Rule 9(b) would involve "too narrow an

approach and fail[] to take into account . . . the general simplicity and flexibility contemplated by

the rules . . . ." *Shared Network Technologies, Inc. v. Taylor*, 669 F. Supp. 422, 429 (N.D. Ga.

1987); *see also Friedlander*, 755 F.2d at 813 n.3 (federal rules "reject the approach that pleading is

a game of skill in which one misstep by counsel may be decisive to the outcome"); *Zuckerman v.

Franz*, 573 F. Supp. 351, 356 (S.D. Fla. 1983). Accordingly, Rule 9(b) must be read in conjunction

with Rule 8. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990).

Allegations of date, time or place may satisfy the Rule 9(b) requirement that the

circumstances of the alleged fraud be pleaded with particularity, but <u>alternative</u> means are also

available to satisfy the rule. *Durham*, 847 F.2d at 1512; *Shared Network*, 669 F. Supp. at 428-29;

*Colonial Penn*, 814 F. Supp. at 1092-93; *see also Del Valle*, 528 F. Supp. at 149 (Rule 9(b) is

satisfied by allegations of the underlying acts and transactions alleged to constitute fraud); *In re

Checkers Sec. Litig.*, 858 F. Supp. 1168, 1175 (M.D. Fla. 1994) (same). In determining the level of

specificity required, the background of the parties and the information available to them must be

considered. This is especially true in matters of corporate fraud where the plaintiffs cannot be

expected to have personal knowledge of the facts constituting the wrongdoing.[7]

---

[7] Corporations operate through their officers, directors and employees, and a plaintiff on the outside looking in, alleging fraud by the corporation, is not expected to plead an itemization of the "who what when and where" of the fraud, even in a misrepresentation case (and certainly not in an omissions case), as the details of the fraud are particularly in the hands of the corporate defendant and plaintiffs need discovery to learn every aspect of the fraud. *See, e.g., Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987); *First Am. Bank & Trust v. Frogel*, 726 F. Supp. 1292, 1295 (S.D. Fla. 1989).

-7-

It is against this legal backdrop that the Court must consider the sufficiency of Blumberg's allegations.

### C. Count I Satisfies Rule 8 & Rule 9(b)

In Count I, Blumberg asserts a claim based on fraudulent <u>omissions</u>, which, as many courts have recognized, are pleaded differently than claims for fraudulent misrepresentations. Indeed, an omissions claim is, "by its very nature, difficult to plead with particularity," based as it is on information that was not disclosed, but should have been. *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988). While federal courts have set forth various formulations of the pleading requirements for an omissions claim, the core requirements are universal:

> To support a claim of fraud by omission, Rule 9(b) requires that the complaint allege (1) what omissions they were, (2) the person responsible for the failure to disclose, (3) the context of the omissions and the manner in which they misled the plaintiffs, and (4) what defendant obtained through the fraud.

*Adler v. Berg Harmon Assocs.,* 816 F. Supp. 919, 924 (S.D.N.Y. 1993) (citing *Gould v. Berk & Michaels*, 1991 WL 152613, at *3 (S.D.N.Y.1991)). Other courts also require a plaintiff stating an omissions claim to allege the basis for the defendant's duty to disclose. *See, e.g., Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993).

Here, Blumberg has provided more than sufficient detail to satisfy Rule 9(b). Blumberg has alleged that USG knowingly sold her single premium fixed annuities without a first-year bonus while selling a bonus-enhanced version of the same annuities to other customers at the same price. *See, e.g.,* ¶¶ 1, 14, 21, 33, 48, 53, 55. Blumberg has alleged that she and Class members were not told of the availability of the superior products, that she had no reasonable means of discovering that she had been defrauded and indeed had no reason even to believe that such an inquiry was necessary.

-8-

*See, e.g.,* ¶¶ 1, 19, 20, 23-25, 27, 41, 49. Blumberg also has alleged that the reason USG engaged in this deception was to provide improper financial incentives to its agents to increase its sales of annuities. *See, e.g.,* ¶¶ 14-16. And, Blumberg has alleged that USG had a duty to disclose because of the extensive regulation of the insurance industry, the prohibition against unfair sales practices, and USG's superior knowledge. *See, e.g.,* ¶¶ 19, 20, 24. In short, USG knows exactly what it is accused of. *See Gas Litigation,* at *2 (as to pleading omissions, "conduct which never occurred cannot be described with greater particularity than to state that it did not occur."). That it may not have a good defense for its conduct does not stem from any failure of pleading on Blumberg's part.

The Amended Complaint thus satisfies each of these elements noted above, because it describes the nature of the omissions (*see, e.g.,* ¶ 1, 14, 21, 33, 48, 53, 55), the entity responsible for the failure to disclose (*see, e.g.,* ¶ 1, 3, 12, 14, 18), the context of the omissions and the way they misled Blumberg (*see, e.g.,* ¶¶ 1, 14-16, 19, 20, 23-25), what USG obtained by its fraudulent scheme (*see, e.g.,* ¶¶ 14-16), and the basis for USG's duty to disclose (*see, e.g.,* ¶¶ 19, 20, 24).

## V. <u>PRIVATE RIGHT OF ACTION</u>

Blumberg has alleged that USG <u>violated</u> § 626.9541(1)(g)(1). Blumberg has <u>not</u> asserted a <u>claim</u> under § 626.9541(1)(g)(1). Although USG raises an interesting academic argument about whether a private right of action exists under § 626.9541(1)(g)(1) (Motion at 11-13), it is, in the end, just that, an academic discussion. It comes as no surprise that USG failed to cite a case to this Court that holds that a complaint which sufficiently states the elements for a particular claim must

-9-

nevertheless be dismissed if the underlying acts for that claim are also a violation of a statute where allegedly no private right of action exists.[8]

## VI. FIDUCIARY DUTY AND DUTY TO DISCLOSE

### A. USG Owed Blumberg and the Class Members a Fiduciary Duty

USG next argues that Count III for Breach of Fiduciary Duty must be dismissed because a fiduciary relationship cannot exist, as a matter of law, between an insured and an insurer under Florida law.[9]  Motion at 13.  USG does not and cannot cite a single Florida case, however, to support this proposition.  And the cases it does cite actually support the principle that a fiduciary relationship can exist between an insured and an insurer.  For example, in *Iowa Nat'l Mutual Ins. Co. v. Worthy*, 447 So.2d 998 (Fla 5th DCA 1984), the Fifth District held only that "in the context of this case" no fiduciary relationship existed, implying that in other contexts, a relationship might indeed exist.  *Id.* at 1002.  Similarly, in *Swerhun v. General Motors Corp.*, 812 F. Supp. 1218 (M.D. Fla. 1993), the court, on a motion for summary judgment, found that "[w]hether a fiduciary duty arose between [the parties] . . . quite obviously, is a question of fact."  *Id.* at 1223.[10]  Ultimately, the court found a

---

[8]  USG's theory would certainly put a crimp in the well-established principle of negligence *per se.*

[9]  USG is an Oklahoma corporation with its principal place of business in Iowa.  Blumberg has alleged a vast home-office fraud that uniformly infected USG's dealings with Blumberg and Class members on a nationwide basis.  Throughout their motion, USG cites primarily Florida law. No choice-of-law determination is necessary at this point in time, however, because USG's arguments fail even under Florida law.  Blumberg, however, reserves as to any classwide choice-of-law questions until class certification.

[10]  This is not to say that such a question of fact cannot exist (and be proven) on a classwide basis.  At the appropriate time, Blumberg will demonstrate that such a classwide duty exists in this case.  *See, e.g., In re Great Southern Life Ins. Co. Sales Practices Litig*, 192 F.R.D. 212 (N.D. Tex. 2000) (certifying claim for breach of fiduciary duty for class treatment); *Medine*, 185 F.R.D. at 371

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.

COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

genuine issue of material fact and therefore denied defendant's motion for summary judgment on the issue of whether a fiduciary duty arose between the parties. *Id.* Likewise, in *Goshen v. The Mutual Life Ins. Co. of New York*, 1997 WL 710669 (N.Y. Sup. Ct. 1997), a New York trial court, applying New York law, cites numerous cases wherein courts around the country have found a fiduciary duty to exist between an insured and an insurer. *See, e.g., Russo v. Massachusetts Mutual Life Insurance Co.*, 1997 N.Y.Misc. LEXIS 170 (March 25, 1997); *Meagher v. Metropolitan Life Ins. Co.*, 119 Misc.2d 615; *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506 (S.D.N.Y. 1997); *In re Jackson Nat'l Life Ins. Co.*, MDL No. 122 (W.D. Mich. 1997); *Busel v. The Guardian Life Ins. Co.*, Index No. 118454/95 (N.Y. Sup. Ct. Aug 22, 1996).[11]

As noted above, the existence of a fiduciary relationship is, at a minimum, a question of fact. *See Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994) (finding that "[f]iduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties . . . .Courts have found a fiduciary relation implied in law when 'confidence is reposed by one party and a trust accepted by the other.'") (citing *Dale v. Jennings*, 90 Fla. 234, 244, 107 So. 175, 179 (Fla. 1925)); *see also Future Tech Int'l v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996) (same). The *Dale* Court recognized that:

> Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an

---

(same).

[11] In addition, USG cites *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557 (Fla. 1997), for the unremarkable proposition that a claim for negligence against an insurance agent for failure to obtain proper insurance coverage cannot be assigned. USG also cites *Moss v. Appel*, 718 So.2d 199 (Fla. 4th DCA 1998), wherein the Fourth District actually found a fiduciary relationship existing between an insurance broker and an insured. *Id.* at 201.

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.

COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation as a fact exists, in which confidence is reposed on one side and there is resulting superiority and influence on the other, and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.

*Dale*, 107 So. at 179.

Courts applying this principle have rightly rejected the argument that no fiduciary relationship exists as a matter of law between an insurer and its insured. *See, e.g., Great Southern*, 192 F.R.D. at 220-21 (holding that allegations of home-office fraud in sale of "vanishing premium" life insurance supported class certification on fiduciary duty claim); *Dornberger*, 961 F. Supp. at 547 n.39 (current concepts of insurance and economic reality imply "an ability to place trust and reliance upon the broad shoulders of the kindly company," quoting John Alan Appleman & Jean Appleman, Insurance Law and Practice § 7004 (1981); also noting that some insurers portray themselves as being "like a good neighbor").

Indeed, it has long been recognized that:

> the very object of a life insurance contract is one involving confidence and trust. The applicant makes an application, which, if accepted, will result in a contract that may, and probably will, be performed after his death. The breadwinner desiring to protect his wife and children against want in the event of his death; the father desiring to make provision for the education of his children, and the son to provide for his parents, asks: "How can I arrange my affairs so as to take care of the needs of those near and dear to me, after my death?" The life insurance company says: "The answer is life insurance. Policies have been framed so as to accomplish the very purposes you have in mind."

*Bekken v. Equitable Life Assurance Soc. of the U.S.*, 293 N.W. 200, 212 (N.D. 1940) (emphasis added). In the decades since *Bekken*, the nature of the insurance business has greatly changed.

-12-

Today, insurance companies like USG market and sell an array of investments to take advantage of an evolving marketplace. Because of this marketplace reality and the increasing complexity of modern life insurance, with its financial planning, investment, tax, asset protection and estate planning qualities, the typical relationship between life insurance company and client has increasingly become one of trust and confidence. *See Great Southern*, 192 F.R.D. at 220-21; *Dornberger*, 961 F. Supp. at 546-47; *see also Koehler v. Merrill Lynch & Co., Inc.*, 706 So.2d 1370 (Fla. 2d DCA 1998) (obligation of victim of fraud in sale of life insurance to exercise due diligence less demanding where perpetrator stands in fiduciary capacity).

Of course, a fact-specific inquiry is not appropriate on a motion to dismiss. The question is only whether Blumberg has sufficiently alleged facts from which such a duty could be found. Blumberg alleges that because of the extensive regulation of the insurance industry, USG's home-office fraud, and the express prohibitions against unfair sales practices and discriminatory benefits included in § 626.9541(1)(g)(1), Blumberg had a reasonable expectation that USG would make a full and honest disclosure of the interest rates available on <u>all</u> of its annuity products. ¶ 19. Blumberg also alleges that USG had superior knowledge regarding its annuity products. ¶ 20. Moreover, Blumberg alleges that USG continued to fail to disclose USG's unfair practice in its periodic account statements it sent to Blumberg after selling her the inferior annuity. ¶ 25.

Perhaps most importantly, Blumberg alleges that USG, at its corporate headquarters, orchestrated a far-flung scheme to defraud where it engaged in material omissions in connection with the sale of its annuities, acts by which it necessarily "stepped into the shoes of a fiduciary." *See Great Southern*, 192 F.R.D. at 220-21. In granting class certification, the *Great Southern* court held that the corporate defendant became a fiduciary by falsely promising investment returns that it

-13-

allegedly knew and failed to disclose were not possible. *Id.* As in that case, USG also profited from the scheme to defraud it hatched from its corporate headquarters, thereby creating a fiduciary relationship between USG and Blumberg. *See id; see also Duffy v. Cavalier*, 215 Cal.App.3d 1517 (Cal. App. 1ˢᵗ Dist. 1989).

### B. USG Owed Blumberg and the Class Members a Duty of Disclosure Independent of any Fiduciary Duty

A fiduciary relationship is not the only basis for a duty to disclose material facts. Retreating behind labels, USG fails to acknowledge that a duty to disclose arises "when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *State of Florida v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. 4th DCA 1995) (emphasis supplied). For example, disclosure may be warranted if one of the parties does not have equal access to material facts. *Kitchen v. Long*, 64 So. 429 (Fla. 1914); *Robson Link & Co. v. Leedy Wheeler & Co.*, 18 So.2d 523 (Fla. 1944); *Ramel v. Chasebrook Const. Co.*, 135 So.2d 876 (Fla. 2d DCA 1961); *Harrell v. Branson*, 344 So.2d 604 (Fla. 1st DCA 1977). In *Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986), the Eleventh Circuit held that in evaluating circumstances that may give rise to a duty to disclose, a court must be mindful of the extent of the defendant's knowledge and the significance of the misstatement or omission. In addition, a court should:

> consider the relationship between the plaintiff and defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment decision, and defendant's role in initiating the purchase or sale.

*Id.* at 1043 (quoting *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977)).

-14-

Blumberg has alleged that USG and its agents owed her and Class members the duty not to make omissions of material facts because of the circumstances of this case, including, among other things, USG's superior knowledge, § 626.9541's prohibition against the very discrimination alleged, the strict regulation of the insurance industry, the importance of the omissions and the fact that the parties were not dealing at arm's length. ¶¶ 19, 20, 24, 25. Blumberg did not have USG's access to information concerning the various interest rates and bonuses that USG offered on its various products, information from which USG benefitted at Blumberg's expense. USG was well aware that its insureds would rely on its omissions, and intended that they do so when it induced the sales of the inferior annuity products through material omissions. USG cannot escape its duty of disclosure to Blumberg based on these factors.

Further, it is axiomatic that if a party undertakes to disclose facts, even if it otherwise owes no duty of disclosure, it assumes a duty to disclose the whole truth. *Stackpole v. Hancock*, 40 Fla. 362, 24 So. 914 (Fla. 1898); *Gutter v. Wunker*, 631 So.2d 1117 (Fla. 4th DCA 1994); *Nicholson v. Kellin*, 481 So.2d 931 (Fla. 5th DCA 1985); *Vokes v. Arthur Murray, Inc.*, 212 So.2d 906 (Fla. 2d DCA 1968); *Ramel*, 135 So.2d at 882. Even a truthful representation requires further amplification if necessary to avoid misunderstanding. *Thiele v. Davidson*, 440 F. Supp. 585, 592 (M.D. Fla. 1977); *Vokes*, 212 So.2d at 909.

To hold otherwise would be an invitation for life insurance companies to defraud by failing to disclose material information to customers who are at a distinct disadvantage for lack of the specialized knowledge, training and information possessed by their insurers. Florida law, and the facts alleged, simply do not require Blumberg to presume that her trust would be abused; that USG would not disclose the best interest rates for each type of annuity about which USG had superior if

-15-

not exclusive, knowledge and influence; and that the money she was unwittingly giving up in extra interest was actually being transferred to USG's agents to motivate them to sell USG's inferior annuities. USG's uniform course of conduct gives rise to a classwide duty of disclosure that has been adequately alleged and should be self-evident. Discovery will shed further light on the extent to which USG itself undertakes to advise, counsel and act in the interests of its insureds. *See Rudolph*, 800 F.2d at 1045 ("since the duty to disclose hinges on the 'circumstances of the case,' . . . . we cannot say on the pleadings whether [defendant] actually had a duty to disclose").

In the meantime, it cannot be said as a matter of law that USG had no fiduciary duty or duty of disclosure.

## VII. UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED

USG argues that Count IV for Unjust Enrichment and Count V for Money Had and Received are equitable claims and therefore should be dismissed because an express contract (the annuity policy) exists, and that Blumberg somehow has a contractual right to collect the damages she seeks in her Amended Complaint. Motion at 15-17. Obviously, this lawsuit has nothing to do with USG's contractual performance under Blumberg's annuity policy. Not surprisingly, USG never goes into detail how its "contractual theory" would work to recover damages associated with USG's practice of selling similar annuities to others with higher interest rates and bonuses.[3]

---

[3] In a similar vein, USG contends that Blumberg's claim for money had and received is a creature of equity, and, therefore, it is not available because Blumberg has an adequate remedy at law. This argument is nonsensical; it would eviscerate a centuries-old cause of action, the essence of which is the recovery of money. *See, e.g., Sharp v. Bowling*, 511 So.2d 363, 365 (Fla. 5th DCA 1987) (common law action for money had and received is an action at law although it is equitable in nature and is founded upon the principle that no one ought to be unjustly enriched at the expense of another).

-16-

Even if this action were based on a "breach of Blumberg's annuity policy" (which it is not),

Blumberg could still assert Counts IV and V. USG's argument ignores Rule 8(e)(2) of the Federal

Rules of Civil Procedure, which provides in pertinent part:

> A party may set forth two or more statements of a claim or defense alternately.... A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds....

Courts have consistently recognized that under Rule 8(e)(2) plaintiffs may allege alternative,

albeit inconsistent, claims. *See Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072,

1074 (M.D. Fla. 1989) (claim of unjust enrichment can be pleaded as an alternative to claim for

breach of contract); *United States v. Kensington Hospital*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991)

(allowing plaintiff to pursue recovery based both on breach of contract and unjust enrichment even

when the existence of a contract would preclude recovery on unjust enrichment claim); *Pasant v.

Jackson National Life Insurance Co. of America*, 768 F. Supp. 661, 662-63 (N.D. Ill. 1991)

(defendant "missed the boat" by failing to acknowledge Rule 8(e)(2)).[4] The claims for money had

and received and unjust enrichment may be asserted despite the existence of Blumberg's annuity

policy.[5]

---

[4] Even the cases cited by USG (at least those which were decided on a motion to dismiss) recognize a plaintiff's right to plead alternative claims under Rule 8(e)(2). *See, e.g., Mobil Oil Corp. v. Dade County*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("Mobil is entitled to plead all alternative theories available under Florida law."); *see also Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1565-66 (S.D. Fla. 1997) ("Under Florida law, a party may simultaneously allege the existence of an oral contract and seek equitable relief under the theory of unjust enrichment.").

[5] USG also contends that since the extra interest generally went into the pockets of its agents, it should not be subject to claims for unjust enrichment and money had and received. USG again ignores the fact that Blumberg has alleged that the extra interest first went to USG. USG then, as part of its scheme to defraud, chose to give some of that interest back to its agents in the form of a kickback. USG's actions after it secured the extra interest from Blumberg has no bearing on the fact

-17-

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.

COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

## VIII. INJUNCTIVE RELIEF

USG's last argument is that Blumberg has not proved the need for a preliminary injunction. Motion at 17-19. USG again raises an argument that is not at issue. Blumberg has not filed a motion for preliminary injunction; she has alleged the elements for injunctive relief. Blumberg may never seek a preliminary injunction. Only time (and discovery) will tell. Until that time, arguing whether Blumberg can prove, and is therefore entitled to, a preliminary injunction is premature. At this juncture, on a motion to dismiss, the only issue is whether Blumberg has alleged the elements for injunctive relief. In the Amended Complaint, Blumberg alleges that USG and its agents continue to sell certain annuities without disclosing that they are selling substantially the same annuities to others with an arbitrary and discriminatory higher interest rate; that, absent injunctive relief, class members will remain subject to the risk of further sales of financially inferior annuities; that Blumberg has no adequate remedy at law to prevent USG from engaging in its unlawful practices; and that an injunction will serve the public interest by stopping USG's discriminatory and unlawful practices. *See* ¶¶ 63-68. Therefore, Count VI states a claim. *See United States v. Fisher*, 977 F. Supp. 1193, 1202 (S.D. Fla. 1997) (setting forth the elements for a permanent injunction).

---

that USG received the extra interest instead of giving it to Blumberg.

HANZMAN CRIDEN CHAYKIN & ROLNICK, P.A.
COMMERCEBANK CENTER • SUITE 400 • 220 ALHAMBRA CIRCLE • CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 357-9000

## IX. CONCLUSION

For the foregoing reasons, USG's motion to dismiss should be denied.

Respectfully submitted,

Hanzman Criden Chaykin & Rolnick, P.A.
Commercebank Center
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
Telephone:  (305) 357-9000
Facsimjle:  (305) 357-9050

Michael A. Hanzman
   Florida Bar No. 510637
Alan H. Rolnick
   Florida Bar No. 715085
Kevin B. Love
   Florida Bar No. 993948

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served this 21

of June, 2000, via U.S. Mail, to: Lewis Murphy, P.A., Steel Hector & Davis, LLP, 200 South

Biscayne Blvd., Suite 4000, Miami, Florida 33131.

Kevin B. Love

L:\LIBRARY\2770\Plead\response to mtd.wpd

-19-